**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vistancia Development LLC, | No. CV-21-01707-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Marsha Preston, et al., | |
| Defendant. | |

Pending before the Court is Defendant DBD LLC's ("DBD") Motion to Set Aside the Entry of Default and the Default Judgment (the "Motion").[1]  (Doc. 21.)  The parties did not request oral argument, and the Court declines to hold oral argument, finding that it is unnecessary.  *See* LRCiv 7.2(f).  The Court has considered the briefing and relevant law and will deny DBD's Motion for reasons explained below.

## I.    Background

The current dispute arose from DBD's challenge of an entry for default.  (Doc. 21.)  DBD extended its challenge to also include the default judgment granted by this Court.  (Doc. 23.)

Plaintiff Vistancia Development LLC ("VDL") is a Delaware limited liability company and owns a residential community in Peoria, Arizona.  (Doc. 1 ¶ 5.)  DBD is an Arizona limited liability company that publishes Northpointe Magazine, a lifestyle

---

[1] The Court construes DBD's Motion to Set Aside to apply to both the Entry of Default and the Default Judgment.

magazine aimed at the residents of VDL's development.  (*Id.* ¶ 9.)  DBD's sole member and manager is Marsha Preston.  (Doc. 1 ¶ 9.)  Preston claims personal ownership of the domain name at issue, www.northpointmagazine.com ("Domain").  (Doc. 21-1 at 2.)  DBD publishes its magazine and solicits advertising through the Domain.  (Doc. 1 ¶¶ 20–23.)  Using Domains By Proxy, a domain privacy service provider, Preston kept her purported ownership of the Domain hidden.  (Doc. 22-6.)  According to the Arizona Corporate Commission, DBD's statutory agent is Alpha Legal.  (Doc. 21-1 at 17–20.)

On October 6, 2021, VDL filed a complaint against DBD and Preston.  (Doc. 1.)  VDL's Complaint sought preliminary and permanent injunctive relief, monetary relief, and attorneys' fees based on DBD's (1) infringement of VDL's trademarks; (2) violation of federal unfair competition and false designation of origin law; (3) violation of the federal Anti-Cybersquatting Consumer Protection Act; and (4) violation of Arizona state trademark infringement and unfair competition law.  (Id. ¶ 1.)

The parties dispute whether VDL served DBD via its statutory agent, Alpha Legal.  (Doc. 21; 22.)  DBD contends that, on October 14, 2021, the process server served Michelle Ziegler[2] via a "substituted service" process.  (Doc. 21.)  DBD further contends that VDL did not serve DBD's statutory agent and that—without "the Curt's [sic] permission"—effected "invalid/void" "substitute service" on an entity not assigned as DBD's statutory agent.  (Doc. 23.)

However, VDL contends that Alpha Legal was properly served, (Doc. 11.), and has provided the Court with evidence that Alpha Legal acknowledged as much.  (Doc. 22-4.)  According to VDL, Alpha Legal then attempted to forward the pleadings to DBD at the address provided by Preston (as the principal of DBD), but the U.S. Postal Service returned the pleading undelivered.  (*Id.*)  Alpha Legal stated that it, "has no personal knowledge of the whereabouts or new address, phone numbers or e-mail of the entity or its principals."  (*Id*.)  Alpha Legal also stated that it, "has not been notified by the entity principals of any changes in either their business address or business operations since appointment as

---

[2] The parties' briefing does not clearly explain Michelle Zeigler's identity.

Statutory Agent on March 24, 2009." (*Id*.)

After the 21-day response window tolled, VDL filed a request for entry of default and declaration on November 11, 2021. (Doc. 12 ¶ 4.) On November 17, 2021, the Clerk of Court filed an entry of default against DBD. (Doc. 13.) Following this, VDL filed a Motion for Default Judgment (Doc. 14), which the Court granted on January 26, 2022. (Doc. 19.)

But because VDL never served Preston, the Court terminated Preston from the case on January 6, 2022. (Doc. 15.) Preston alleges that she first received knowledge of the Complaint on February 21, 2022, when GoDaddy.com contacted her regarding the transfer of the Domain. (Doc. 21-1 ¶ 2.) A family tragedy delayed Preston from seeking immediate legal counsel. (Doc. 21.) Later in March, Preston received a different communication from an arbitration forum related to this issue as well. (*Id*.) Following this, Preston, on behalf of DBD, retained legal counsel and attempted to contact Alpha Legal to no avail. (*Id*.) On April 18, 2022, DBD filed the instant Motion. (Doc. 21)

## II.    Legal Standard

Under Rule 55(c), an entry of default may be set aside by the Court for good cause, and Rule 60(b) provides a list of factors for setting aside a final default judgment. However, the Ninth Circuit has held that, "the three factors derived from the 'good cause' standard that governs the lifting of entries of default under Fed. R. Civ. P. 55(c) govern the vacating of a default judgment under Rule 60(b) as well." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

To determine good cause, the Court evaluates the following three factors: (1) whether the culpable conduct of the defendant led to the default; (2) whether the defendant has a meritorious defense; or (3) whether the plaintiff will be prejudiced. *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984); *see also American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000) ("This tripartite test is disjunctive, meaning that the district [is] free to deny the motion if any of the three factors [are] true.") (cleaned

up).  Should the Court find that the culpable conduct of the defendant led to the default judgment, the Court does not need to consider the other *Falk* factors.  *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987).

Moreover, "a district judge has discretion to grant or deny a Rule 60(b) motion to vacate a default judgment," but this discretion is limited by two important policy considerations: (1) Rule 60(b) must be liberally applied since it is remedial in nature; and (2) default judgment is generally disfavored.  *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).  If any doubt still exists, it "should be resolved in favor of the motion to set aside the judgment." *Gregorian v. Izvestia*, 871 F.2d 1515, 1523 (9th Cir. 1989).

## III.    Discussion

Although default judgement should be limited and a case should be decided on the merits whenever possible, this is "not intended to allow challenges to the correctness of the judgment itself."  *Falk*, 739 F.2d at 463.  The Court's analysis starts with the liberal application of Rule 60(b) to determine whether "good cause" exists for setting aside the default judgment by applying the *Falk* factors.  *Falk*, 739 F.2d at 463.

In its motion, DBD argues that the *Falk* factors provide grounds to set aside the default judgment.  (Doc. 21 at 4–5.)  Those grounds are: (1) DBD's conduct was not culpable; (2) setting aside the default judgment will not prejudice VDL; and (3) DBD has "several" meritorious defenses it can "vigorously" pursue.  (*Id.*)

The first *Falk* factor considers whether the default was the result of DBD's culpable conduct.  *Falk*, 739 F.2d at 463.  "[T]he defendant's conduct is culpable if he has received *actual or constructive* notice of the filing of the action and *intentionally* failed to answer." *Alan Neuman Procs., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) (emphasis added).

### 1.  DBD Received Constructive Notice via Alpha Legal

A corporation may be served in the same manner as an individual.  Fed. R. Civ. P. 4(h)(1)(A).  An individual may be served by following the serving summons law of the

- 4 -

1   state in which the district court jurisdiction is located.  Fed. R. Civ. P. 4(e)(1).  Arizona law

2   prescribes that limited liability companies must maintain a statutory agent.  A.R.S. § 29-

3   3115(A).  The only pertinent duty of the statutory agent is to forward any process, notice,

4   or demand to the limited liability company "that is served on or received by the agent."

5   A.R.S. § 29-3115(C)(1).

6         Here, Alpha Legal was served as the statutory agent of DBD, and DBD—as the

7   principal—had constructive notice of the Complaint.   Under Arizona law, the limited

8   liability company bears the burden of maintaining and updating its address and contact

9   information for the statutory agent.  *See, e.g.*, *Postal Ben. Ins. Co. v. Johnson*, 165 P.2d

10  173, 178 (Ariz. 1946) ("Unless, therefore, the showing made disclosed that the agents were

11  excusable in failing to advise defendant of the summons, the court properly denied the

12  application to set aside the judgment."); *Lynch v. Ariz. Enter. Mining Co.*, 179 P. 956, 957

13  (Ariz. 1919) ("[I]f the agent had made any reasonable effort to discover the address of any

14  officer of the company, he would have succeeded, and it must be held that he was culpably

15  negligent in not doing so, and that his negligence was the defendant's negligence.").

16        It is unreasonable to suggest that DBD was invalidly or improperly served when its

17  statutory agent, Alpha Legal, received the Complaint and attempted to forward it to DBD—

18  who in turn failed to maintain an accurate and correct mailing address.[3]  DBD's failure to

19  maintain  the  correct  contact  information  with  Alpha  Legal  does  not  affect  DBD's

20  constructive  notice  because  service  of  the  statutory  agent  effectuates  service  of  the

21  principal, regardless of when the statutory agent forwards the Complaint.  *See Barlage v.*

22  *Valentine*, 110 P.3d 371, 378 (Ariz. Ct. App. 2005).

23

24  ───────────────

    [3] DBD's contention that VDL executed "substitute service" is immaterial because—as
25  Alpha Legal acknowledges—the Complaint reached Alpha Legal, which in turn attempted
    to forward the Complaint to DBD.  (Doc. 22-4.)  Additionally, although the record does
26  indicate that Alpha Legal ceased business operations sometime prior to late March of 2022,
    neither party addresses when Alpha Legal ceased operations.  It is unknown if Alpha Legal
27  notified DBD that it was ceasing operations, but this does not alter the Court's conclusion
    because Alpha Legal was still in operation when this suit first commenced in October of
28  2021.  (*Id.*)

The Court is unpersuaded by DBD's argument that it was invalidly or insufficiently served.   Therefore, the Court rejects DBD's challenges and finds that DBD recieved constructive notice of the Complaint.  To find otherwise would create a pocket of immunity for limited liability companies which fail to maintain up to date information and therefore avoid liability since they could not be served by their statutory agent.

**2.  DBD Intentionally Failed to Respond**

To determine whether a party intentionally failed to respond, the Court must first analyze the "legal sophistication" of a party.  *Martinez v. Auto Now Fin. Servs. Inc.*, No. CV-21-01155-PHX-JAT, 2022 WL 1395728, at *2 (D. Ariz. Apr. 18, 2022).  The Court determines a party's legal sophistication by considering a party's previous familiarity with the legal process or any consultation at the time of the default.  *See TCI Grp.*, 244 F.3d at 699 n.6.  If a party is not legally sophisticated, "intentionally" means that

> [A] movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.

*Martinez*, 2022 WL 1395728, at *2 (quoting *U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1093 (9th Cir. 2010)) (quotation marks omitted).

Here, the Court finds that DBD is not a legally sophisticated party.  At the time of the default, the record indicates that DBD did not have legal counsel.  Rather, DBD acquired legal counsel *after* the granting of default judgment.  Additionally, the record does not indicate any previous lawsuits involving DBD which would provide background familiarity with the legal process.

As a non-legally sophisticated party, courts "have 'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'"  *Mesle*, 615 F.3d at 1092 (quoting *TCI Group*, 244 F.3d at 698).

Here, the Court finds DBD acted in bad faith by failing to maintain correct

information with its statutory agent, Alpha Legal.  DBD prevented potential service via its statutory agent because, although it held out Alpha Legal as the correct entity to serve, Alpha Legal could not forward the summons and complaint to DBD.  *See* Ariz. R. Civ. P. 4.1(i).  Although DBD *may* claim it accidentally failed to update Alpha Legal with a correct address,[4] the Court views this failure to update such information as inexcusable neglect and an attempt to take advantage of the opposing party and manipulate the legal process.  *Pena*, 770 F.2d at 815.  If such failures are allowed to persist, defendants will continually seek relief from default judgment for improper service even though the fault lies solely in the defendant's failure to maintain an accurate mailing address with the statutory agent.

Therefore, the Court finds DBD received constructive notice, acted intentionally in not responding, and, consequently, finds DBD's conduct was culpable.  Because DBD's culpable conduct led to the default judgment, DBD failed to present "good cause" for setting aside the default judgment.  *Falk*, 739 F.2d at 463.

The Court notes that—despite the fact that the current dispute arose from a default judgment entered only against DBD—DBD's motion is written as if on Preston's behalf, a nonparty to the case.  Indeed, no judgment has been entered against Preston personally. The judgment pertains only to DBD, its agents, members, officers, directors, servants, employees, attorneys, and any and all persons in active concert or participation with it from directly or indirectly.  (Doc. 19.)  Therefore, Preston is permanently enjoined only in her official capacity with DBD under the default judgment.

///

///

///

///

///

///

---

[4] The Court notes that DBD made no argument as to why it did not update its mailing address with its statutory agent.  (*See generally* Doc. 21.)

**IV.     Conclusion**

Accordingly,

**IT IS THEREFORE ORDERED** denying of DBD's Motion.  (Doc. 21.)

Dated this 15th day of June, 2022.

Honorable Susan M. Brnovich
United States District Judge